May it please the Court. I'm Craig Harbaugh, attorney for Timothy James and Helen in this case. The issue before this Court is narrow. Whether the invalid malice instruction prejudiced James' murder trial. Right. How did it prejudice? Your Honor, it prejudiced in three ways. First, the erroneous instruction reduced the prosecution's burden of proof on the key contested issue of malice. Second, the evidence was sufficient to support the simple malice theory and therefore the jury could have convicted on that basis. And third, the jury struggled in reaching a verdict and had trouble with the definitions in this case. Turning first to the erroneous instruction reducing the burden of proof. Under California law, the critical element that distinguishes murder from voluntary manslaughter is malice. There are only two valid theories of malice aforethought. Implied malice and expressed malice. James' jury was presented with a third simple malice instruction which is not appropriate in a murder trial. But the evidence at trial, and I take it Mr. James' theory, was that he had shot Rodella, Mr. Rodella, at close range, but it was out of self-defense or imperfect self-defense. So I was having a hard time understanding why the elements of implied malice for the district court's instructions weren't amply supported by the evidence at trial and the jury would have had to have found them. So the fact that there was an erroneous instruction, I didn't see how that infected the whole trial. Maybe you could explain that. Yes, Judge Akuti, that's precisely what I wanted to address. The district court concluded, sub silencio, that expressed malice was not an issue. So the sole distinction here is whether the evidence was sufficient to support implied malice or simply simple malice. Implied malice has three elements. Intentional act, natural consequences are dangerous to human life. And then third, deliberately performed with knowledge of the danger to and with conscious disregard to life. There was substantial evidence presented, not simply in support of a self-defense, either reasonable or unreasonable, but substantial evidence to undermine that mental state of conscious disregard. First, there was evidence that Mr. James is mentally retarded. He has an IQ of 65. The defense presented a neuropsychologist, Dr. Hal Boone, who testified that an individual with Mr. James' frontal lobe damage has extreme difficulty generally handling, dealing with problem situations, coping with that, coping with life's experiences. In a highly anxious event such as this, his problem-solving skills would be even worse. The jury heard this. They heard that. They did, Your Honor. Yes, Your Honor. Second, the defense presented a veteran police officer, John Fry, who testified about how when a normal person is in the state of dealing with confronting a potential threat, and this, in particular, a police officer, will go into a sort of tunnel vision where once they perceive the threat and begin to fire, then multiple shots are fired thereafter. Finally, Your Honor, the evidence shows, Your Honors, that James did not own the, he was not an avid gun user, did not have the weapons more than four days at the time of the shooting. And so based upon that, the jury could have concluded that, or could have certainly relied on the lesser burden of malice in convicting James. Well, if you were arguing this case on appeal to us, that might be an argument. But this is a hideous case, isn't it? It is, Your Honor. And don't we have to look at what the state court did? Your Honor, in the typical case, the court will, under AEDPA, refer to the state court's determination. The district court essentially concluded that the district court's determination was objectively unreasonable under clearly established federal law. Respondent does not assert either that the decision was, that there was no due process violation, nor that the district court's decision, or the state court's decision was reasonable. The sole issue here is whether it was harmless under the Brett v. Abramson standard, which does not at all require deference to the state court. That is essentially a federal de novo standard that is applied. I mean, in the sense that there's no underlying state court findings to defer to. Okay. So what is the standard that we have to apply? Your Honor, as I pointed out in the briefs, it's problematic. This Court has adopted two various interpretations of the Brett standard as applies to an erroneous instruction, and has at times said the standard is a reasonable probability, which is analogous to the Strickland standard, and in his other times, in Medley v. Runnels, the Court has indicated that it's a reasonable likelihood standard, which is less than a reasonable probability. And the concurrence, or the action to dissent in Hedgman v. Polito, the case that overruled this Court's absolute certain standard, essentially adopted a reasonable likelihood standard. And so it's a field of question. So the Court gave the Petitioner an extra burden, or gave him an extra, so to speak, something beneficial to him, because it went to the absolute certainty when it didn't have to under the Hedgepeth case, right? Yes, yes and no, Your Honor. The district court did apply the heightened standard and then misapplied it under this Court's precedent. This Court has made very clear that the absolute certain standard, as the name implies, requires that the federal court must conclude that there's no way that the jury relied upon the erroneous instruction. But we don't use that anymore, right? That is true, Your Honor. It's very irrelevant. Yes, Judge Akuta, I was simply addressing Judge Seiler's point that even though the district court, or this is probably Respondent's argument, because the district court applied the heightened erroneous standard, therefore, the district court's decision should be upheld on the lesser standard of Brett. But in applying that standard, not only were there no jury verdict that encompassed the implied malice standard. Did the government argue the case, did the State argue the case on a simple malice theory? Your Honor, the State did not argue the simple malice theory. But as this Court held in Ho versus Carey, the prosecutor's argument is irrelevant in cases involving invalid legal theories as opposed to ambiguous jury instructions. And that's what the Supreme Court held in Middleton versus McNeil. And this is not dealing with an ambiguous jury instruction. It's where the jury is presented with two alternative theories of guilt, one being nonexistent under State law. But the question is whether there's a reasonable probability that it would have reached a different result if this instruction hadn't been given. Is that the standard? Your Honor, based upon this Court's decision in Clark versus Brown, if you apply the reasonable probability, it's the reasonable probability that the instruction could have impacted the jury's determination. Is that a post-Hedgepeth case? Because Hedgepeth just was the Brecht standard, substantial injurious effect. Yes, Your Honor. And this Court, in interpreting the Brecht standard in the erroneous instruction context, has adopted a reasonable probability standard. And so, Your Honor, it's with a reasonable probability that it affected. And if this Court is not inclined to find that that standard is met, at a minimum, there is grave doubt. And I would point the Court to the jury's struggle in reaching a verdict. The jury foreman presented to the trial judge in this case that the jury had reached an impasse, that they were deadlocked and could not reach a verdict, and told the Court that they were having difficulty with some of the definitions in this case. In addition, Your Honors, the jury foreman had signed multiple jury verdict forms and was forced to void those. Now, the problem is the trial court didn't, the trial judge didn't resolve those, the definitions that the jury was struggling with, nor did the, do we know what those verdicts the jury had initially signed. All right. Your time is set up. Thank you, Your Honors. Good morning, Your Honors. Deputy Attorney General Jason Tran, on behalf of the Respondents. The petitioner shot Rodella, the victim, in the head from two feet away. He then also shot the victim in the back. Given those facts, it is improbable that the jury would not have found the requisite men's array after murder with the instructional error that occurred in this case. So, what this case really comes down to is, did the instructional error impair petitioner's ability to claim self-defense? And I submit no, there was no such impairment. Petitioner claimed self-defense. He testified at trial that he shot in self-defense. And by making that claim, he conveyed that he had only one intention, and that was to protect himself. So, even with the simple malice instruction of intent to vex, annoy, or injure, by claiming self-defense, and if the jury believed that defense, then really that instruction is a non-issue. So, given those circumstances, any, the alleged, or the instructional error in this case, had no substantial and injurious effect upon the jury's determination of guilt. And the district court, in fact, said it was certain that it didn't. Exactly. And that standard is lower. It didn't even have to find that. Absolutely. And so, if the district court was so certain that the error was harmless under a heightened standard, then certainly it was harmless under a lower standard. So, given those findings, I will submit unless this court has any questions. Are there any questions? Are there any questions of the panel's counsel? Thank you. Thank you. The matter just argued is submitted, and is it okay to just move forward? We'll proceed to hear the last matter on the calendar, which is United States v. Reyes-Bosk and Ramirez-Escueda.
judges: Siler, Schroeder, Ikuta